IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RONNIE BOBO                                                                         PLAINTIFF

V.                                                        CASE NO. 3:08CV72

PROFESSIONAL BUILDING SERVICES, INC.
CAPITAL SECURITY SERVICES, INC.                            DEFENDANT

**MEMORANDUM OPINION**

This cause comes before the court on the motions of defendants, Professional Building Services, Inc. ("PBS") and Capital Security Services, Inc. ("CSS"), for summary judgment.

Plaintiff, Ronnie Bobo, suffers from anxiety and panic disorders with agoraphobia. Begining in February 2007, he was employed by PBS as a part-time janitor. He performed cleaning services at the Corinth Welcome Center. Debra Bobo was at all pertinent times Ronnie's supervisor.[1] On July 5, 2007, Ronnie was fired.

Bobo filed the instant suit alleging he was terminated by PBS because of his mental disability or alternatively that he was terminated because a CSS employee, J.D. Tomlinson, complained to PBS that Bobo was unable to work because of his disability.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d

---

[1] Debra and Ronnie are distant cousins although the evidence shows they do not have a close familial relationship. Ronnie's wife is also named Debra. For the purposes of this motion the only Debra referenced is Ronnie's supervisor.

265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

Ronnie's claim that he was terminated because of his mental disability is governed by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112. At the summary judgment stage such a claim requires either direct evidence of discrimination or circumstantial evidence sufficient to satisfy the framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Stalcup v. Communication Workers of America*, 44 Fed. Appx. 654 (5th Cir. 2002) (citing *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)).

> Under this framework a plaintiff
>
> can establish a prima facie case of discrimination by showing that: (1) she suffers from a disability; (2) she is qualified for the job: (3) she was subject to an adverse employment action; and (4) she was treated less favorably than non-disabled employees.

*Id*. (citing *Daigle*, 70 F.3d at 396). These "elements are not set in stone but, rather, can be formulated to fit the circumstances of a particular case." *Id*. (citing *McDonnell Douglas*, 411 U.S. at 802 n.13; *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.3 (5th Cir. 1996)). For instance, the Fifth Circuit has found that a prima facie case can be made out by "showing that (1) [a plaintiff] has a disability, (2) he was qualified for the job, and (3) he was subject to an adverse employment action because of his disability." *White v. American Habilitation Services*, 67 Fed.

Appx. 252 (5th Cir. 2003) (citing *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999)).

The first element requires Ronnie to show he suffers from a disability. Under the ADA the term disability means (1) "a physical or mental impairment that substantially limits one or more . . . major life activities; [(2)] a record of such an impairment[,] or [; (3)] being regarded as having such an impairment." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir. 1995) (citing 42 U.S.C. § 12102(2)).

The Social Security Administration has ruled Ronnie is disabled. As such there is a record of disability satisfying the first prong of the prima facie test.[2]

The next question is whether Ronnie was qualified for the position he held. Ronnie performed janitorial duties for PBS including mopping, cleaning restrooms, taking out the trash, and changing light bulbs. "A 'qualified individual with a disability' is one with a 'disability,' who, 'with or without reasonable accomodation, can . . . perform the essential functions of the employment position that [he or she] holds or desires.'" *Grubb v. Southwest Airlines*, 296 Fed. Appx. 383, 387-88 (5th Cir. 2008) (quoting 42 U.S.C. § 12111(8)). There is ample evidence in the record that Ronnie could and did perform his assigned tasks. In fact PBS's asserted reasoning behind terminating Ronnie was based on behavior unrelated to his performance of the essential duties of his position. Further Ronnie's supervisor described him as a good worker. As such Ronnie was qualified for the purposes of the ADA.

Ronnie was terminated so there is no question he was subject to an adverse employment action.

---

[2] There is also some evidence that PBS regarded Ronnie as having an impairment. No finding is needed on this point, however, as it is clear there is a record of Ronnie having a disability. The ultimate decision in all employment discrimination cases is whether or not discrimination occurred. The *McDonnell Douglas* framework is simply a tool for moving summary judgment motions to that end. As such there is no need to explore all the contours of possible *prima facie* cases.

Finally Ronnie must show either he was treated differently from non-disabled employees or that the adverse employment action was taken because he was disabled. He argues he can show both. Ronnie was replaced by a non-disabled employee, Phillip Cary. Under Fifth Circuit law this is enough to establish the final prong of the *McDonnell Douglas* test.[3] *See Franco v. City of Corpus Christi*, 254 F.3d 1081 (5th Cir. 2001) (citing *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir. 1996)).

Under *McDonnell Douglas*, once a plaintiff has proven a *prima facie* case the burden shifts to the defendant to offer a legitimate non-discriminatory reason for its employment decision. *Crews v. Dow Chemical Co.*, 287 Fed. Appx. 410, 412 (5th Cir. 2008) (citing *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 276 (5th Cir. 2000)). The legitimate non-discriminatory reason offered by PBS is that Ronnie would not follow instructions involving avoiding contact with visitors and staff at the welcome center where he worked.

Once a legitimate non-discriminatory reason is given the burden then shifts back to Ronnie to establish that the employer's explanation is actually pretext for unlawful discrimination. *Id.* (citing *McInnis*, 207 F.3d at 279). Ronnie argues that a reasonable jury could find that the reason given was pretext because it was simply made up after the decision to fire him had been made.

In support of this contention Ronnie argues that he was never given the verbal warnings for which unsigned documentation was produced. Additionally, Ronnie's supervisor, Debra, testified that employees would normally only be fired after getting three warnings and that Ronnie was never given three warnings. Debra also stated other employees were allowed to

---

[3] Because this finding is sufficient to move past the *prima facie* portion of the *McDonnell Douglas* test, the court makes no additional findings as to Ronnie's other assertions.

speak with visitors.

This court is normally hesitant to accept self-serving statements in deciding summary judgment motions. *See e.g. James v. City of Pontotoc, Miss.*, 2009 WL 982084, at *5 n.2 (N.D. Miss. April 13, 2009) (citing *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004)). However, in this matter Ronnie's testimony rings true. Even from the cold record it is clear that Ronnie's account is more credible than any of the other testimony. Courts have some discretion in deciding when to accept such evidence. In this instance it would work an injustice not to accept Ronnie's testimony as being competent evidence.

The court also finds that there is sufficient evidence from Debra's deposition for a reasonable jury to infer that the reasons given by PBS were not the basis of Ronnie's termination, but instead were pretextual. This finding is supported by inconsistencies between the documentary evidence of warnings given to Ronnie and the deposition testimony of Debra. In addition the narrative offered by PBS simply seems untrue. This is exactly the type of case the Supreme Court had in mind when handing down its decision in *Reeves*. 530 U.S. 133. PBS was in the best position to offer up its reason for the firing. Having offered a reason that a rational jury could disbelieve is an indication that discrimination may have occurred. *Id*. at 147.

As such a rational jury could determine that it is more likely than not Ronnie's firing was caused by disability discrimination. PBS's motion for summary judgment is denied.

The court next addresses CSS's motion for summary judgment. Ronnie alternatively plead CSS employee Tomlinson maliciously interfered with his employment.

CSS asks for summary judgment asserting Ronnie can not prove Tomlinson's actions caused his termination.

In order to prove a claim for malicious interference a plaintiff must show that :

> (1) . . . the acts [in question] were intentional and wilful; (2) . . . they were calculated to cause damage to the plaintiff[']s lawful business; (3) . . . they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) . . . actual damage and loss resulted.

*Irby v. Citizens Nat. Bank of Meridian*, 121 So.2d 118, 119 (Miss. 1960).

For the purposes of this motion there is no dispute that Tomlinson made statements intended to cause Ronnie to be fired. Further there is no disagreement that the statements were made with the unlawful purpose of causing damage and that such damage occurred. The only question before the court is whether there is sufficient evidence from which a reasonable jury might determine that Tomlinson's actions caused Ronnie to be fired.

Tomlinson documented a laundry list of complaints that he had about Ronnie's work.[4] Debra initially denied that Tomlinson relayed those negative comments to her, but later admitted that Tomlinson had made negative comments to her. This is supported by the fact that Ronnie and Debra never worked at the same time. Thus any information she relied on had to come from an outside source. Additionally, Phillip Cary testified that Debra told him Ronnie was going to be fired because of problems between Ronnie and a security guard. Finally, there is evidence that Tomlinson told Ronnie he would have him fired and Ronnie was fired before the beginning of his next shift.

CSS claims that Debra did not make the decision to fire Ronnie. Instead it asserts Susan Guy, a PBS director headquartered in Jackson, made the decision. CSS states there is no proof Tomlinson ever had any contact with Guy. However, the proof submitted shows that Guy had no personal knowledge of Ronnie's work. Instead Guy had to rely on the reports she got from

---

[4] Based on the substance of the motions the court does not have to find that the complaints from Tomlinson were unjustified. However, it is clear that the vast majority of Tomlinson's problems with Ronnie were in no way indicative of poor performance of his duties.

Corinth. It is undisputed that Debra reported to her. Since the information Debra passed on to Guy in large part was the same information offered by Tomlinson a reasonable jury could determine that Tomlinson's comments percolated their way to Guy.

Additionally, it is irrational to believe Tomlinson kept a written list of his problems with Ronnie unless he intended to use that list in some way. As such the existence of such an unusual document is itself circumstantial evidence that Tomlinson was in communication with Ronnie's supervisors.

There is a material question of fact as to whether or not Ronnie would have been able to continue his employment were it not for the Tomlinson's actions. In order to find the truth a credibility determination has to be made. Credibility determinations are properly with the province of the jury. Thus summary judgment is inappropriate.

Finally, the court addresses the claim that Ronnie should not be able to recover because he is already receiving Social Security disability. A plaintiff who has represented to the Social Security Administration that they are unable to work and then subsequently filed an employment discrimination claim "must produce 'an explanation of this apparent inconsistency' that is sufficient to defeat summary judgment on the issue of whether the plaintiff is a qualified individual with a disability."[5]

Social Security rules and regulations clearly allow individuals receiving disability benefits to work as long as that work does not constitute "substantial gainful activity." 20 C.F.R. § 404.1574. Ronnie was well within the guidelines of acceptable behavior under this system. 20

---

[5] The court finds this defense is inapplicable to the claim against CSS. There is no requirement that an individual be 'qualified' under that cause of action. Further, CSS concedes this defense has never previously been applied in such a case. However, the court will address the merits of this defense as it is applicable to the claim against PBS.

C.F.R. § 404.1574(a)-(d).  As such the court finds Ronnie has a sufficient explanation of any apparent inconsistency.

The fact is that Ronnie can do some limited work.  The evidence tends to show that the work Ronnie is capable of performing is not sufficient to succeed in the labor market.  Ronnie was able to work a part-time job earning $6.00 per hour with no benefits.  This earning potential, of $6,250 per year, is not significant enough to support anyone.  The Social Security Administration allows such negligible employment.  The law does not punish a disabled individual for taking advantage of their limited skills in order to perform some type of work.  Such a rule would work a grave injustice.

There are material questions of fact allowing Ronnie to go forward with each of his claims.

The summary judgment motions [38, 40] of defendants, PBS and CSS, are DENIED.

This the 8th day of December, 2009.

/s/ MICHAEL P. MILLS
CHIEF JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI